UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TERRY CATHERINE AND JAMIL LEE  ) | CIVIL ACTION NO.: 17-7561 |
| ) | |
| Plaintiffs,  ) | SECTION: E |
| ) | JUDGE SUSIE MORGAN |
| vs.  ) | |
| ) | MAGISTRATE: 1 |
| SURETEMPS, LLC; FULL FORCE ) | MAGISTRATE JUDGE JANIS VAN |
| STAFFING, LLC; AND METRO SERVICE ) | MEERVELD |
| GROUP, INC.  ) | |
| ) | |

_____

**FIRST AMENDED AND SUPPLEMENTAL COLLECTIVE ACTION COMPLAINT**

NOW INTO COURT through undersigned counsel, come Plaintiffs, Terry Catherine and Jamil Lee (collectively "Plaintiffs"), who, on behalf of themselves and all other similarly employed persons, seek to assert claims for unpaid minimum wage and unpaid overtime against the following joint employer defendants: SureTemps, LLC; Full Force Staffing, LLC and Metro Services Group, Inc. and add as joint employer defendants Exclusive Temporaries, Inc.; TSM Enterprises, LLC; Troy Bailey, Steve Arnold and Maurice Robichaux, representing as follows:

**JURISDICTION**

1.      Jurisdiction in this Court is proper as the claims are brought pursuant to the Fair Labor Standards Act, as amended (29 U.S.C. §201, *et seq*., hereinafter called the "FLSA") to recover unpaid minimum wages, unpaid overtime wages, an equal amount as liquidated damages, pre-judgment interest, and reasonable attorneys fees and costs.

2.      The jurisdiction of the Court over this controversy is based upon 29 U.S.C. §216(b).

**VENUE**

3.     Venue is proper in the Eastern District of Louisiana under 28 U.S.C. § 1391 because it is where Defendants are subject to personal jurisdiction, where Defendants do business in the State of Louisiana, and where the unlawful acts complained of occurred.

**PARTIES**

4.     Plaintiff Terry Catherine is a resident of the State of Louisiana performing services for Defendants in the Parish of Orleans.

5.     Plaintiff Jamil Lee is a resident of the State of Louisiana performing services for Defendants in the Parish of Orleans.

6.     Defendant SureTemps, LLC ("SureTemps") is or was a Louisiana company that, during all or part of the time period set forth in the Complaint, was engaged in business in the Eastern District of Louisiana.

7.     Defendant Full Force Staffing, LLC ("Full Force") is or was a Louisiana company that, during all or part of the time period set forth in the Complaint, was engaged in business in the Eastern District of Louisiana.

8.     Defendant Metro Service Group. Inc. ("Metro Service") is or was a Louisiana company that, during all or part of the time period set forth in the Complaint, was engaged in business in the Eastern District of Louisiana.

9.     Defendant Exclusive Temporaries, Inc. ("Exclusive") is or was a Louisiana company that, during all or part of the time period set forth in the Complaint, was

engaged in business in the Eastern District of Louisiana.

10.    Defendant TSM Enterprises, LLC (TSM") is or was a Louisiana company that, during all or part of the time period set forth in the Complaint, was engaged in business in the Eastern District of Louisiana.

11.    Defendant Troy Bailey is an individual residing in the State of Louisiana who, upon information and belief served or serves and an officer, agent or decision-making manager for Defendants SureTemps, Full Force, Exclusive, and/or TSM.

12.    Defendant Steve Arnold is an individual residing in the State of Louisiana who, upon information and belief served or serves and an officer, agent or decision-making manager for Defendants SureTemps, Full Force, Exclusive, and/or TSM

13.    Defendant Maurice Robichaux is an individual residing in the State of Louisiana who, upon information and belief served or serves and an officer, agent or decision-making manager for Defendants SureTemps, Full Force, Exclusive, and/or TSM.

14.    The individual defendants have been named as joint employers herein due to their exclusive management, control and decision making authority with respect to the corporate defendants.

15.    Upon information and belief, SureTemps, Full Force, Exclusive and TSM – which are owned and/or operated or managed by the same person or persons (namely defendants Troy Bailey, Steve Arnold and Maurice Robichaux) and employ the same persons to perform the same jobs interchangeably, changing only the company's name when insurance and operating expenses get too high – meaning that all scheduling, payroll and employment policies are governed by the policies and procedures promulgated by the individual defendants and that although nominally incorporated,

SureTemps, Full Force, Exclusive and TSM all act as a unit operating under the direct control of the individual defendants.

16.   Unless otherwise specified, Plaintiffs refer to all defendants collectively as "Defendants."

## FLSA COVERAGE ALLEGATIONS

17.   All previous paragraphs are incorporated as though fully set forth herein.

18.   At all times material hereto, Plaintiffs were "engaged in commerce" within the meaning of §6 and §7 of the FLSA while working for Defendants and were subject to the individual coverage of the FLSA.

19.   Specifically, Plaintiffs were "engaged in commerce" because they used equipment and materials in the performance of their job tasks for Defendants that originated outside the state of Louisiana, including tools, machinery, gas and other equipment and materials.

20.   In addition, Defendants as a business enterprise were "engaged in commerce" within the meaning of the FLSA because they jointly operated and engaged in business involving the receipt of objects, equipment and/or materials across state lines.

21.   At all times material hereto, Plaintiffs were "engaged in the production of goods" for commerce within the meaning of §6 and §7 of the FLSA, and subject to the individual coverage of the FLSA.

22.   Specifically, Plaintiffs were engaged in the performance of gathering waste materials for Defendants.

23.   At all times material hereto, Defendants were an "enterprise engaged in commerce" within the meaning of FLSA in that they used materials and equipment that did not originate in Louisiana and operated their businesses across state lines.

4

24.   Based upon information and belief, the annual gross revenue of Defendants was in excess of $500,000.00 per annum during the relevant time periods.

25.   At all times material hereto, Plaintiffs were "employees" of Defendants within the meaning of FLSA.

26.   Specifically, Plaintiffs performed services on job sites owned or operated by Defendants.

27.   Defendants controlled all aspects of Plaintiffs' work, including times Plaintiffs worked, where they performed their work, the services they performed and the manner in which those services were performed.

28.    In addition, Defendants provided Plaintiffs with all of the equipment and materials they needed to perform their jobs for Defendants.

29.   Defendants exercised complete control over Plaintiffs, and Plaintiffs were economically dependent upon Defendants.

30.   Plaintiffs were not in business for themselves.

31.   Plaintiffs were not independent contractors and did not have a contract to perform discrete, specialized services for Defendants or work on discrete, separate projects.

32.   Defendants had the power to hire and fire Plaintiffs.

33.   Defendants paid Plaintiffs via checks issued from multiple Defendants, and Plaintiffs were unable to determine which Defendant would be paying them at any given time.

## JOINT EMPLOYER ALLEGATIONS

34.    All previous paragraphs are incorporated as though fully set forth herein.

35.   At all times material hereto, Defendants were Plaintiffs' "joint employers" within

the meaning of FLSA.

36.     Specifically, Defendants' operations were so intertwined as to be indistinguishable.

37.     Defendants Exclusive, SureTemps, Full Force and TSM retained Plaintiffs to work as "Hoppers" on Metro Service's garbage trucks.

38.     "Hoppers" are the persons who hop on and off of the back of a garbage truck to pick up trash for collection.

39.     Plaintiffs worked shifts set by Metro Services's business, performed services for customers contracted with Metro Service, and performed an essential function of Metro Service's trash collection business.

40.     They worked with and on equipment provided by Metro Services.

41.     They signed in and out with Metro Services for shifts and Metro Services kept track of their time.

42.     Defendants Exclusive, SureTemps, Full Force and TSM operate out of the same office and issued paychecks to Plaintiffs interchangeably for their work physically collecting trash on Metro Service's garbage trucks that serviced Metro Service's clients.

43.     Defendants Exclusive, SureTemps, Full Force and TSM would direct Plaintiffs as to which Metro Services truck they would work during their shifts physically collecting trash on Metro Service's garbage trucks that serviced Metro Service's clients.

44.     Upon completion of their shifts, Defendant Metro Services would provide Defendants Exclusive, SureTemps, Full Force and/or TSM with the hours that they worked physically collecting trash on Metro Service's garbage trucks that serviced Metro Service's clients.

45.     Defendants Exclusive, SureTemps, Full Force and TSM would issue reflective

vests to Plaintiffs that Metro Service required them to wear while they performed work physically collecting trash on Metro Service's garbage trucks that serviced Metro Service's clients.

46.    Thus, in the manner described above, Defendants Exclusive, SureTemps, Full Force and TSM provided Plaintiffs as persons to staff and complete the work of physically collecting trash on Metro Service's garbage trucks that serviced Metro Service's clients.

47.    At all times material hereto, the work performed by the Plaintiffs was directly essential to the business performed by Defendants.

48.    At all times material hereto, Defendants Exclusive, SureTemps, Full Force and TSM were under the exclusive operation and unified control of the individual defendants.

## STATEMENT OF FACTS

49.    All previous paragraphs are incorporated as though fully set forth herein.

50.    In 2015, Plaintiff Catherine was hired by Defendants to work as a "hopper."

51.    For the duration of his employment with Defendants, given the relationship between him and the Defendants and the amount of control they exercised over him, Plaintiff Catherine was legally considered as Defendants' "employee."

52.    Plaintiff Catherine worked for Defendants until November 2016.

53.    During Plaintiff Catherine's tenure with Defendants, Defendants exercised total control over the time, place and manner of his work.  He had no ability to control his schedule, the place or time he would work or who he would be working with during the time he spent working for Defendants.

54.    When Plaintiff Catherine began working for Defendants, he was initially paid $95 per day.  Later that amount was increased to $100 per day.  Plaintiff Catherine was paid

these flat rates regardless of the number of hours he worked in one day, the only exception being that he was only paid $50 per day if he did not complete a full day's work consisting of two shifts or if he did not agree to accept an unpaid third shift on days where Defendants' extra workload necessitated additional manpower.

55.     Plaintiff Catherine generally worked between 11 to 14 hours per day for 4 to 6 days a week for Defendants.

56.     Thus, Plaintiff Catherine regularly worked well in excess of 40 hours per week for Defendants, but was not paid time and one-half for any hours worked in excess of 40 per week, in direct violation of the FLSA.   This continued for the entire time he was employed by Defendants.

57.     In addition, during weeks when Plaintiff Catherine worked the maximum amount of hours possible for Defendants at a flat rate of pay, Plaintiff Catherine was not paid the federally-mandated minimum wage of $7.25 per hour.  For example, during weeks when Plaintiff worked 14 hours per day, 7 days per week for Defendants but was only paid $665.00, his hourly rate of pay was approximately $5.00 per hour. This situation occurred throughout the duration of his employment with Defendants.

58.     Documentation concerning the number of hours actually worked by Plaintiff Catherine and the compensation actually paid to Plaintiff Catherine is in the possession and custody and control of Defendants.

59.     In 2012, Plaintiff Lee was hired by Defendants to work as a "hopper."

60.     For the duration of his employment with Defendants, given the relationship between him and the Defendants and the amount of control they exercised over him, Plaintiff Lee was legally considered as Defendants' "employee."

61.     Plaintiff Lee continues to work for Defendants.

62.     During Plaintiff Lee's tenure with Defendants, Defendants exercised total control over the time, place and manner of his work.  He had no ability to control his schedule, the place or time he would work or who he would be working with during the time he spent working for Defendants.

63.     When Plaintiff Lee began working for Defendants, he was initially paid $95 per day.  Later that amount was increased to $100 per day.  Plaintiff Lee was paid these flat rates regardless of the number of hours he worked in one day, the only exception being that he was only paid $50 per day if he did not complete a full day's work consisting of two shifts or if he did not agree to accept an unpaid third shift on days where Defendants' extra workload necessitated additional manpower.

64.     Plaintiff Lee generally worked between 11 to 14 hours per day for 4 to 5 days a week for Defendants.

65.     Thus, Plaintiff Lee regularly works well in excess of 40 hours per week for Defendants, but was not paid time and one-half for any hours worked in excess of 40 per week, in direct violation of the FLSA.

66.     In addition, during weeks when Plaintiff Lee works the maximum amount of hours possible for Defendants at a flat rate of pay, Plaintiff Lee is not paid the federally-mandated minimum wage of $7.25 per hour.  For example, during weeks when Plaintiff works 14 hours per day, 5 days per week for Defendants but is only paid $500.00, his hourly rate of pay was approximately $7.14 per hour.

67.    Documentation concerning the number of hours actually worked by Plaintiff Lee and the compensation actually paid to Plaintiff Lee is in the possession and custody and control of Defendants.

68.    Thus, Defendants have violated Title 29 U.S.C. §207 from in that:

a.    Plaintiffs (and the putative collective action class plaintiffs) worked in excess of forty (40) hours per week during their periods of employment with Defendants throughout the time they were employed by Defendants;

b.    No payments, or provisions for payment, have been made by Defendants to properly compensate any of the Plaintiffs (and the putative collective action class plaintiffs) at the statutory rate of one and one-half times their regular rate for those hours worked in excess of forty (40) hours per work week as provided by the FLSA;

c.    During some weeks when Plaintiffs (and the putative collective action class plaintiffs) worked for Defendants, they were not paid the federally-mandated minimum wage of $7.25 per hour; and

d.    Defendants have failed to maintain proper time records as mandated by the FLSA.

69.    In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

70.    Specifically, Defendants had in place a system of payment that did not take into account the number of hours Plaintiffs worked each workweek, that did not take steps to compensate Plaintiffs at the federally-mandated minimum rate of pay, did not take steps to track or pay Plaintiffs for any hours worked in excess of 40 per week, despite the fact that Plaintiffs were clearly not exempt from the provisions of the FLSA.

71.   Defendants knowingly paid Plaintiffs on a "daily rate" system in an effort to not pay them overtime or minimum wage and calling them "subcontractors", despite the fact that under the applicable law, Plaintiffs (and the putative collective action class plaintiffs) are not considered "subcontractors" in any manner that would exempt them from the provisions of the FLSA.

72.   Defendants kept a list of the hours that Plaintiffs (and the putative collective action class plaintiffs) worked for them, and were therefore aware that they were not being paid the federally-mandated minimum wage rate and/or overtime and they did not take any steps to guarantee that Plaintiffs (and the putative collective action class plaintiffs) received the federally-mandated minimum wage or overtime pay.

## COLLECTIVE ACTION ALLEGATIONS.

73.   All previous paragraphs are incorporated as though fully set forth herein.

74.   Plaintiffs bring this FLSA claim as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons in the State of Louisiana, who, since July 2014, previously worked or currently work for Defendants as hoppers at a flat daily rate of pay, but were not paid the federal minimum wage for each and every hour that they worked and/or worked in excess of 40 hours per week, but were not paid overtime for all hours worked in excess of 40 per week, all in direct violation of the FLSA.

75.   Plaintiffs bring this case as a collective action under the FLSA to recover unpaid minimum wages, unpaid overtime compensation, liquidated damages, statutory penalties, attorneys' fees and costs, and damages owed to Plaintiffs and all similarly situated employees of Defendants.

76.   Plaintiffs estimate that there are dozens, if not hundreds, of members of the FLSA Collective Plaintiffs who have been affected by Defendants' improper policies and

practices.  Plaintiffs' estimate that potential members of the FLSA Collective Plaintiffs number in the dozens, if not the hundreds, is based upon the number of current employees of Defendants, the number of work locations maintained by Defendants, the Defendants' treatment of all of its employees in the same manner, and the turnover rate of Defendants' employees in the last three years.  It would be impractical to join all of those employees and former employees in this action.

77.     The precise number of FLSA Collective Plaintiffs can be easily identified and located using Defendants' timesheets, payroll, time records and other personnel records.

78.     Given the composition and size of the FLSA Collective Plaintiffs and the potential that many members may be transient, potential opt-in class members may be informed of the pendency of this Collective Action by direct mail and text messaging.

79.     This action is properly maintained as a collective action because Plaintiffs are similarly situated to the collective action members they seek to represent.

     a. Plaintiffs and similarly situated employees worked for Defendants as "hoppers" and were subject to the same job scheduling policies, payment practices, and operational procedures. Additionally, Defendants' willful policy or practice, whereby they have failed to pay these employees federally-mandated minimum wage and/or overtime wages for all hours worked in excess of 40 per week, has affected Plaintiffs and similarly situated employees in the same fashion.

     b. Plaintiffs are personally aware that other persons who worked for Defendants as hoppers were subject to the same job scheduling policies, payment practices and operational procedures. Additionally, Defendants' willful policy

or practice, whereby they have failed to pay these employees federally-mandated minimum wages and/or overtime wages for all hours worked in excess of 40 per week, has affected Plaintiffs and the similarly situated hopper employees of Defendants in the same fashion.

c.   Although the number of hours worked by each of the Plaintiffs and FLSA Collective Plaintiffs may differ, the payment scheme of paying "hoppers" a flat rate of pay, regardless of how many hours that they worked, thereby failing to pay "hoppers" minimum wage and/or overtime wages for those who worked in excess of 40 hours per week overtime is common to all "hoppers" who worked for Defendants and the hours each employee worked should be readily determinable by review of Defendants' records.

d.   Accordingly, Plaintiffs are in the best position to represent all members of the FLSA collective class as a whole.

80.   In addition, because Defendants applied their unlawful employment and payment policies in the same manner to all potential members of the FLSA Collective Plaintiffs, common issues of law and fact predominate, and therefore pursuing this matter as a collective action serves as the most expeditious use of the court's time and resources, as well as avoiding multiple actions on these issues, with the potential for differing or inconsistent judgments.

81.   Plaintiffs request that the Court authorize notice to the FLSA Collective Plaintiffs to inform them of the pendency of this action and their right to "opt-in" to this lawsuit pursuant to 29 U.S.C. § 216(b), for the purpose of seeking unpaid overtime compensation and liquidated damages under the FLSA.

## CAUSES OF ACTION

## COUNT I:  FAILURE TO PAY OVERTIME IN VIOLATION OF THE FAIR LABOR STANDARDS ACT 29 U.S.C. § 201 *ET. SEQ.*

82.    Plaintiffs re-allege and re-aver all previous paragraphs of the Complaint as if fully set forth herein.

83.    During all time periods relevant hereto, Plaintiffs (and the putative collective action class plaintiffs) worked in excess of forty (40) hours per week for Defendants, but Plaintiffs (and the putative collective action class plaintiffs) were not compensated at the statutory rate of one and one-half times their regular rate of pay for these overtime hours.

84.    Plaintiffs (and the putative collective action class plaintiffs) were, and are, entitled to be paid at the statutory rate of one and one-half times their regular rate of pay for those hours worked in excess of forty (40) hours.

85.    At all times material hereto, Defendants failed to comply with Title 29 and United States Department of Labor Regulations, 29 C.F.R. §§516.2 and 516.4, by implementing a management policy, plan or decision that intentionally provided for the compensation of Plaintiffs (and the putative collective action class plaintiffs) as if they were exempt from coverage under 29 U.S.C. §§201 through 219, disregarding the fact that they were not exempt.

86.    At all times material hereto, Defendants failed to maintain proper time records as mandated by the FLSA.

87.    Defendants' actions were willful and/or showed reckless disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs (and the putative collective action class plaintiffs) at the statutory rate of one and one-half times

their regular rate of pay for the hours worked in excess of forty (40) hours per week when

they knew, or should have known, such was and is due.

88.    Defendants have failed to properly disclose or apprise Plaintiffs (and the putative

collective action class plaintiffs) of their rights under the FLSA.

89.    Due to the intentional, willful, and unlawful acts of Defendants, Plaintiffs (and the

putative collective action class plaintiffs) suffered lost compensation for time worked

over forty (40) hours per week, plus liquidated damages.

90.    Plaintiffs (and the putative collective action class plaintiffs) are entitled to an award

of reasonable attorney's fees and costs pursuant to 29 U.S.C. §216(b).

### COUNT TWO: FAILURE TO PAY MINIMUM WAGE IN VIOLATION OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201 *ET. SEQ.*

83.    Plaintiffs re-allege and re-aver all previous paragraphs of the Complaint as if fully

set forth herein.

84.    During all time periods relevant hereto, Plaintiffs (and the putative collective action

class plaintiffs) at some time worked an amount of hours per week for Defendants for

which their daily rate of pay did not compensate them for all hours worked at the

federally-mandated minimum wage rate of $7.25 per hour.

85.    Plaintiffs (and the putative collective action class plaintiffs) were, and are, entitled

to be paid at the federal minimum wage for each hour they worked for Defendants.

86.    At all times material hereto, Defendants failed to comply with Title 29 and United

States Department of Labor Regulations, 29 C.F.R. §§516.2 and 516.4, by implementing

a management policy, plan or decision that intentionally provided for the compensation

of Plaintiffs (and the putative collective action class plaintiffs) as if they were exempt

from coverage under 29 U.S.C. §§201 through 219, disregarding the fact that they were not exempt.

87.   At all times material hereto, Defendants failed to maintain proper time records as mandated by the FLSA.

88.   Defendants' actions were willful and/or showed reckless disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs (and the putative collective action class plaintiffs) at the federal minimum wage rate when they knew, or should have known, such was and is due.

89.    Defendants have failed to properly disclose or apprise Plaintiffs (and the putative collective action class plaintiffs) of their rights under the FLSA.

90.    Due to the intentional, willful, and unlawful acts of Defendants, Plaintiffs (and the putative collective action class plaintiffs) suffered lost compensation equal to the difference in their hourly wages and the federal minimum wage, plus liquidated damages.

91.   Plaintiffs (and the putative collective action class plaintiffs) are entitled to an award of reasonable attorney's fees and costs pursuant to 29 U.S.C. §216(b).

### COUNT III: SUCCESSOR LIABILITY UNDER THE FLSA

92.   Plaintiffs re-allege and re-aver all previous paragraphs of the First Amended and Supplemental Collective Action Complaint as if fully set forth herein.

93.   In addition to the foregoing claims, to the extent that any of the Defendant identified as Exclusive, SureTemps, Full Force or TSM no longer exist or are no longer in operation and were not formed until after the institution of this litigation and that operations previously undertaken by Exclusive, SureTemps, Full Force

and/or TSM were subsequently transferred to another of these entities, Plaintiff also asserts claims against it for successor liability to them under the FLSA.

94.  Based on information and belief the persons who own, manage and/or operated Exclusive, SureTemps, Full Force and TSM are the same or substantially the same persons and are therefore aware of all of the facts alleged herein, including Defendants' failure to pay the Plaintiffs and FLSA Collective Action Plaintiffs in accordance with the FLSA.

95.  Based upon information and belief, Exclusive, SureTemps, Full Force and/or TSM do substantially the same business, use substantially the same equipment, operate out of the same or substantially same location and employ the same or substantially same supervisory personnel and employees, who are doing the same jobs and are essentially the same business under varying names.

96.  Accordingly, in the event that any of these entities were created or defunded after the facts that gave rise herein, each of these entities is liable as a successor to the previous entities.

## ATTORNEY'S FEES

97.  Plaintiffs have retained the law firm of Jackson+Jackson to represent Plaintiffs and FLSA Collective Action Plaintiffs in the litigation and have agreed to pay the firm a reasonable fee for its services.

## CONSENT

98.  Plaintiffs' consent to file this Complaint is evidenced by their signatures on the FLSA Consent Forms that are attached hereto.

## JURY DEMAND WITHDRAWN

99.     Plaintiffs hereby withdraw their demand for trial by jury on all issues so triable as a matter of right by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that judgment be entered in their favor against Defendants.

a.     Declaring, pursuant to 29 U.S.C. §§2201 and 2202, that the acts and practices complained of herein are in violation of the maximum hour provisions of the FLSA;

b.     Awarding Plaintiffs (and the putative collective action class plaintiffs) overtime compensation in the amount due them for Plaintiffs' time worked in excess of forty (40) hours per workweek;

c.     Awarding Plaintiffs (and the putative collective action class plaintiffs) liquidated damages in an amount equal to the overtime award;

d.     Declaring, pursuant to 29 U.S.C. §§2201 and 2202, that the acts and practices complained of herein are in violation of the minimum wage provisions of the FLSA;

e.     Awarding Plaintiffs (and the putative collective action class plaintiffs) minimum wage compensation in the amount due them;

f.     Awarding Plaintiffs (and the putative collective action class plaintiffs) liquidated damages in an amount equal to the minimum wage award;

g.     Awarding Plaintiffs (and the putative collective action class plaintiffs) reasonable attorney's fees and costs and expenses of the litigation pursuant to 29 U.S.C. §216(b);

h.     Awarding Plaintiffs pre-judgment interest and legal interest to which they are entitled; and

 i. Awarding Plaintiffs all other relief to which they are entitled.

      Respectfully submitted,


      */s/ Mary Bubbett Jackson*
      Jody Forester Jackson, (La. Bar No. 28938)
      Mary Bubbett Jackson, (La. Bar No. 29110)
      **JACKSON+JACKSON**
      201 St. Charles Avenue, Suite 2500
      New Orleans, Louisiana 70170
      T: (504) 599-5953
      F:  (888) 988-6499
      E: jjackson@jackson-law.net
       mjackson@jackson-law.net
      Attorneys for Plaintiffs and FLSA Collective Action Plaintiffs


## CERTIFICATE OF SERVICE

 Plaintiffs hereby certify that a copy of the foregoing was served on all counsel of record via this Court's CM/ECF system on this 21st day of December, 2018.  In addition, Plaintiffs will request that the remaining Defendants waive service,

      */s/ Mary Bubbett Jackson*