# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TERRY CATHERINE, ET AL.,**<br>    **Plaintiffs** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-7561** |
| **SURETEMPS, LLC, ET AL.,**<br>    **Defendants** | **SECTION: "E" (1)** |

## ORDER AND REASONS

Before the Court is the Joint Motion to Approve Settlement and for Dismissal filed by named Plaintiffs Terry Catherine and Jamil Lee and Defendants SureTemps, LLC; Full Force Staffing, LLC; Metro Service Group, Inc.; Exclusive Temporaries, Inc.; TSM Enterprises, LLC; Troy Bailey; Steve Arnold; and Maurice Robichaux.[1] For the reasons that follow, the motion is **GRANTED**.

## BACKGROUND

On August 7, 2017, named Plaintiffs Terry Catherine and Jamil Lee brought this collective action against Defendants SureTemps, LLC (SureTemps); Full Force Staffing, LLC (Full Force); and Metro Service Group, Inc. (Metro) pursuant to the Fair Labor Standards Act of 1938 ("FLSA").[2] On December 26, 2018, Plaintiffs added Exclusive Temporaries, Inc. (Exclusive); TSM Enterprises, LLC (TSM); Troy Bailey; Steve Arnold; and Maurice Robichaux as defendants.[3] Plaintiffs allege Defendants employed them as

---

[1] R. Doc. 97.
[2] R. Doc. 1.
[3] R. Doc. 59.

1

"joint employers" and failed to pay them overtime wages and minimum wage in violation of the FLSA.[4]

Defendants Exclusive, SureTemps, TSM, and Full Force retained Plaintiffs to work as "hoppers" aboard garbage trucks owned by Metro Service.[5] "Hoppers" are the workers who ride on the outside of the garbage truck and collect trash.[6] According to Plaintiffs, Defendants Steve Arnold, Troy Bailey, and Maurice Robichaux served or serve as officers, agents, or decision-making managers for Defendants SureTemps, Full Force, Exclusive, or TSM.[7]

Plaintiffs allege they were paid a flat daily rate for their employment, regardless of the number of hours they worked.[8] Plaintiff Terry Catherine alleges he worked between 11 and 14 hours a day for 4 to 6 days a week, but was not paid time and a half for any hours worked in excess of 40 hours per week, in violation of the FLSA.[9] And given his flat rate of pay, Catherine further alleges he was not paid the federally-mandated minimum wage of $7.25 per hour on days in which he worked long shifts.[10] Plaintiff Jamil Lee alleges similar treatment.[11]

Beyond their personal claims, named Plaintiffs bring this FLSA claim as a collective action, pursuant to 29 U.S.C § 216(b), on behalf of all persons in Louisiana, who, since July 2014, previously worked or currently work for Defendants as hoppers at a flat daily rate of

---

[4] *Id.*
[5] *Id.* ¶ 37.
[6] *Id.* ¶ 38.
[7] *Id.* ¶ 11–13.
[8] *Id.* ¶ 54.
[9] *Id.* ¶ 55–56.
[10] *Id.* ¶ 57.
[11] *Id.* ¶ 63–66.

pay but were not paid the federal minimum wage for every hour they worked or were not paid overtime for all hours worked in excess of 40 per week.[12] Plaintiffs seek unpaid minimum wages, unpaid overtime compensation, liquidated damages, statutory penalties, attorneys' fees and costs, and damages owed to Plaintiffs and all similarly situated employees.[13]

Defendants deny all liability,[14] deny Plaintiffs' primary factual allegations, and raise numerous affirmative defenses.[15] Defendants assert this case should not proceed as a collective action because the named Plaintiffs are not similarly situated to those they seek to represent and assert collective treatment is inappropriate because individual issues predominate over issues generally applicable to the collective action.[16] Defendants also contend the claims are time-barred by the two-year statute of limitations.[17] Finally, Defendants argue Plaintiffs' claims are barred by Section 10 of the Portal-to-Portal Act[18] because the actions in connection with Plaintiffs' compensation were taken in good faith and done in conformity with and reliance upon written federal administrative regulations.[19]

On March 28, 2018, the Court conditionally certified Plaintiffs' FLSA Collective Action.[20] Over the next year, the parties conducted discovery and eventually submitted witness and exhibit lists.[21] On April 17, 2019, the Court entered an order of dismissal after

---

[12] *Id.* ¶ 74.
[13] *Id.* ¶ 75.
[14] R. Doc. 100-1, at 2.
[15] R. Doc. 60; R. Doc 85.
[16] R. Doc. 60; R. Doc 85.
[17] R. Doc. 60; R. Doc 85.
[18] 29 U.S.C. § 259
[19] R. Doc. 60; R. Doc 85.
[20] R. Doc. 31.
[21] R. Doc. 79; R. Doc. 86; R. Doc 91.

receiving notice that the parties had reached a compromise.[22] After an extension, the parties had 90 days in which to consummate the settlement.[23]

On July 16, 2019, the parties filed the instant Joint Motion to Approve Settlement and for Dismissal.[24] Under the Settlement Agreement, Defendants agree to pay each plaintiff an amount, ranging from $0 to over $15,000, calculated according to that plaintiff's individual work history.[25] Defendants also agree to pay $100,000 in attorneys' fees and $10,000 in incentive bonuses to the named plaintiffs.[26] Plaintiffs and their counsel represent they believe the settlement is "in the best interests of Plaintiffs and the FLSA Collective Action Members."[27]

## **STANDARD OF LAW**

The Court "must approve any settlement reached by the parties which resolves the claims in this action brought under [29 U.S.C. § 216(b)]."[28] "In order to approve a settlement proposed by an employer and employees of a suit brought under the FLSA and enter a stipulated judgment, a court must determine that the settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions."[29] The Court must scrutinize the proposed settlement agreement to verify that parties are not circumventing the "clear FLSA requirements" by entering into a settlement agreement.[30] When deciding whether to approve a proposed settlement, the Court must assess whether the proposed

---

[22] R. Doc. 94.
[23] R. Doc. 97.
[24] *Id.*
[25] R. Doc. 100-1, at 8–9; R. Doc. 100-4.
[26] R. Doc. 100-4.
[27] R. Doc. 100-1, at 3.
[28] *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 717 (E.D. La. 2008).
[29] *Id.*
[30] *See id.*

settlement is (1) the product of a bona fide dispute over the FLSA's provisions and (2) fair and reasonable.[31]

## ANALYSIS

### I. The Settlement is the Product of a Bona Fide Dispute

When deciding whether a bona fide dispute exists, the Court considers whether there is a "genuine dispute as to the Defendant's liability under the FLSA,"[32] as "[w]ithout a bona fide dispute, no settlement could be fair and reasonable."[33] This is particularly true in an "FLSA [action because its provisions] are mandatory, and not subject to negotiation and bargaining between employers and employees."[34]

The Court finds a bona fide dispute exists between Plaintiffs and Defendants with regard to whether Defendants violated the FLSA. Plaintiffs allege they were not paid overtime wages or minimum wage as required by the FLSA.[35] Defendants continue to deny these allegations and raise affirmative defenses.[36] The Court finds this sufficient to conclude that, in this case, there was "aggressive prosecution and strenuous defense" to prove a bona fide dispute.[37]

### II. The Settlement is Fair and Reasonable

In determining whether a negotiation is fair and reasonable under the FLSA, courts are guided by *Reed v. General Motors Corporation*, in which the Fifth Circuit enumerated

---

[31] *Domingue v. Sun Electric & Instrumentation, Inc.*, No. 09-682, 2010 WL 1688793, at *1 (E.D. La. Apr. 26, 2010).
[32] *Allen v. Entergy Operations, Inc.*, No. 11-1571, 2016 WL 614687, at *1 (E.D. La. Feb. 11, 2016).
[33] *Collins*, 568 F. Supp. 2d at 719.
[34] *Allen*, 2016 WL 614687, at *1.
[35] R. Doc. 59 ¶ 74.
[36] R. Doc 85; R. Doc 60.
[37] *See Atkins v. Worley Catastrophe Response, LLC*, No. 12-2401, 2014 WL 1456382, at *2 (E.D. La. Apr. 14, 2014).

5

factors to determine whether a settlement is fair in a class action under Rule 23 of the Federal Rules of Civil Procedure.[38] Courts, however, "adopt or vary these factors in their application in light of the special role of the Court in settlement of FLSA claims."[39] There are six factors for the Court to consider: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives, and absent class members.[40]

### A. There was no fraud or collusion behind the settlement

With respect to the "fraud or collusion" factor, there are several presumptions that guide a court's determination of whether a settlement is fair and reasonable. "[T]here is a strong presumption in favor of finding a settlement fair,"[41] and, absent evidence to the contrary, there is a presumption that no fraud or collusion occurred between counsel.[42] In light of these presumptions, however, "it is clear that the court should not give rubber-stamp approval."[43]

Under the Settlement Agreement in this case, Plaintiffs will receive money in accordance with the shifts they worked, and Plaintiffs' counsel will receive significant attorneys' fees and costs.[44] As explained herein, the Court finds the settlement amount

---

[38] *Allen*, 2016 WL 614687, at *2; *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). *See also Collins*, 568 F. Supp. 2d at 722 (noting "Rule 23 does not control FLSA collective actions, [but] many courts have adopted many of Rule 23's procedures" given the court's discretion under §216(b)).
[39] *Collins*, 568 F. Supp. 2d at 722.
[40] *Id.* (citing *Camp v. Progressive Corp.*, No. 01-2680, 2004 WL 2149079 (E.D. La. Sept. 23, 2004)).
[41] *Domingue*, 2010 WL 1688793, at *1 (internal quotations omitted).
[42] *Akins*, 2014 WL 1456382, at *2.
[43] *Id.* (quoting 4 NEWBERG ON CLASS ACTIONS §11.41 (4th ed.)).
[44] R. Doc. 100-4.

reasonable in light of Plaintiffs' factual allegations. The Court has found no indication of fraud or collusion, and the parties have engaged in discovery, motions practice, and negotiations to resolve this matter. Accordingly, the Court finds this factor indicates the settlement is fair and reasonable.

### B. *The litigation will likely be complex, expensive, and lengthy*

The instant case has been pending for more than two years.[45] Prior to dismissal, the Court had scheduled a five-day bench trial to begin on May 20, 2019.[46] In this collective action, there would be numerous issues of fact, such as the alleged "joint employer" status of the Defendants, that would contribute to the complexity, expense, and duration of the litigation. The Court finds the unresolved issues and the complexity of the litigation indicate the settlement is fair and reasonable.

### C. *Significant discovery has been completed*

A court will consider how much formal discovery has been completed for two reasons: (1) "extensive discovery [by the parties indicates] a good understanding of the strengths and weaknesses of their respective cases and hence that the settlement's value is based upon such adequate information," and (2) "full discovery demonstrates that the parties have litigated the case in an adversarial manner and . . . settlement is not collusive but arms-length."[47] The lack of much formal discovery is not necessarily fatal, however, and a court may look to informal avenues of gathering information or may approve a

---

[45] R. Doc. 1.
[46] R. Doc. 40.
[47] NEWBERG ON CLASS ACTIONS § 13:50 (5th ed.)

settlement with no formal discovery conducted.[48]

In this case, the parties represent Defendants have provided Plaintiffs with "extensive data and documents concerning the Plaintiffs and the FLSA Collective Action Members and their claims, engaged in settlement negotiations over a period of months, and have now reached [an] agreement."[49] At this stage of the proceedings, the parties completed discovery and submitted witness and exhibit lists.[50] Given this sufficient opportunity to engage in discovery and reach a good understanding of the strengths and weaknesses of their respective cases, the Court finds the parties have litigated the case in an adversarial manner and are sufficiently familiar with the facts of this case to reach a fair settlement. This factor weighs in favor of finding the settlement fair and reasonable.

### D. Plaintiffs' probability of success on the merits is uncertain

It is uncertain at this point whether Plaintiffs would be successful. Defendants deny Plaintiffs' allegations and provide a series of affirmative defenses such as the untimeliness of the suit, the impropriety of a collective action in this case, and a statutory bar to recovery.[51]

Given the unresolved disputes between the parties and the stage at which this litigation remains, the Court finds it is unclear whether and to what extent Plaintiffs would be meritorious. This factor indicates the settlement is fair and reasonable.

### E. The settlement award falls within a range of possible recovery

---

[48] *See id.*; *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 241 (5th Cir. 1982) (explaining that formal discovery is not "a necessary ticket to the bargaining table" if the parties and the court are adequately informed to determine the fairness of the settlement) (citing *In re Corrugated Container Antitrust Litigation*, 643 F.2d 195, 211 (5th Cir. 1981)).
[49] R. Doc. 100-1, at 2.
[50] R. Doc. 79; R. Doc. 86; R. Doc 91.
[51] R. Doc. 60; R. Doc 85.

Under the Settlement Agreement, Defendants will pay individual plaintiffs according to the harm they allegedly suffered as a result of unpaid overtime wages or wages below minimum wage.[52] As noted, the amounts are based on a calculation that considers the work history of each plaintiff. Furthermore, the agreement awards Plaintiffs substantial attorneys' fees and gives "incentive bonuses" to the named plaintiffs.[53] The Court finds the agreed-upon recovery is within a range of possible recovery and indicates the settlement is fair and reasonable. [54]

### *F. Opinions of class counsel, class representatives, and absent class members all favor discovery*

The parties in this case jointly seek judicial approval of a settlement agreement that addresses a bona fide dispute and was negotiated in good faith.[55] All parties are represented by counsel, and the parties negotiated the Settlement Agreement before the magistrate judge and submitted their proposed agreement for *in camera* review by the Court.[56] The Court finds the final factor indicates the settlement is fair and reasonable.

All six of the forgoing factors indicate the settlement in this case is fair and reasonable. Accordingly, the Court finds the settlement is fair and reasonable.

### CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Joint Motion to Approve Settlement and for Dismissal be and hereby is **GRANTED** and that the Parties'

---

[52] R. Doc. 100-1, at 8–9.
[53] R. Doc. 100-4.
[54] *See Collins*, 568 F. Supp. 2d at 726–27.
[55] R. Doc. 97.
[56] *Id.*

9

Settlement Agreement is **APPROVED**.[57]

**IT IS FURTHER ORDERED** that this action is **DISMISSED WITH PREJUDICE** in accordance with the terms of the Settlement Agreement, each party to bear its own attorneys' fees and costs except as provided in the Settlement Agreement. The Court shall retain jurisdiction to address any disputes between the parties regarding the Settlement Agreement.

**New Orleans, Louisiana, this 27th day of August, 2019.**

*Susie Morgan*
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[57] *Id.*